## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | Civil Action No. 11-cv-303 |
| Plaintiff, | ) | |
| | ) | Hon. Robert W. Gettleman |
| v. | ) | |
| | ) | Magistrate: Hon. Morton Denlow |
| JAMES A. KNIGHT, DEFOREST DAVIS, PAUL | ) | |
| FLASK, MARIE O'BARR, CYNTHIA KNIGHT, | ) | |
| BARRY BRUBAKER, PETER WILLMOTT, | ) | |
| OLNEY LP, KNIGHT QUARTZ FLOORING – | ) | |
| GLOBAL, LLC, ROBERT WASIELEWSKI, | ) | |
| LISA ROGERS, FGMK, LLC, FROST, | ) | |
| RUTTENBERG, & ROTHBLATT, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT FROST, RUTTENBERG, & ROTHBLATT, P.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT AND STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Defendant Frost, Ruttenberg, & Rothblatt, P.C. ("Frost"), by and through its counsel,

Williams Montgomery & John Ltd., presents its Memorandum of Law In Support of Its Motion

To Dismiss Counts I and II of the Plaintiff's Second Amended Complaint and Strike Plaintiff's

Claim For Punitive Damages and in support thereof states as follows:

### BACKGROUND

This is the Plaintiff's Second Amended Complaint. The Plaintiff filed its First Amended

Complaint and all Defendants moved to dismiss it. Instead of responding to such motions, the

Plaintiff simply filed an Amended Complaint, purporting to cure the numerous deficiencies

pointed out to it in the motions. As set forth below, the deficiencies are in no way cured.

Frost is an accounting firm that was hired by Knight Industries, LLC and its related

subsidiaries ("Knight Entities") to perform audits of the consolidated balance sheets of the

Knight Entities for the years ended December 31, 2005 and December 31, 2006. The Plaintiff is

1

Bank of America, N.A., which lent money to the Knight Entities. The Knight Entities' financial condition deteriorated and Plaintiff claims that it has incurred substantial losses.

The genesis of the Plaintiff's claim is that certain directors, officers, and controlling members of the Knight Entities ("Knight Defendants") were looting the Knight Entities by paying benefits to themselves, self-dealing, and abusing the positions of authority and control. The Plaintiff alleges that the Knight Defendants concealed this conduct by using an elaborate web of corporate entities to shuffle assets between the entities to create the illusion of profitability and stability of the Knight Entities. The Plaintiff also claims that the Knight Defendants diverted assets and opportunities from the Knight Entities, which were indebted to the Plaintiff, into other companies owned and/or controlled by the Knight Defendants. In other words, the Plaintiff alleges that the Knight Defendants unlawfully drained the Knight Entities of its assets and value leaving nothing left for the Plaintiff to collect.

The Plaintiff also attempts to bring claims against Frost and the accounting firm hired to audit Knight Industries' 2007 financial statements, FGMK, LLC. The Plaintiff alleges that the accounting firms failed to adequately review the Knight Entities' accounting policies for GAAP compliance, failed to follow Generally Accepted Auditing Standards in performance of their audits, and issued clean audit reports for the years 2005, 2006, and 2007 when they should not have. (Compl. ¶ 4.) In September 2008, the Knight Entities defaulted on over $35,000,000 of outstanding indebtedness to the Plaintiff. (Compl. ¶ 83.) The Plaintiff claims that, notwithstanding the default, it did not know, nor reasonably could if have known, at that time that the Knight Entities would ultimately be unable to pay the amounts due to Plaintiff and did not know that such conduct was attributable to wrongful conduct. The Plaintiff seeks to hold Frost liable for professional negligence (Count I) and aiding and abetting the alleged breaches of

fiduciary duty by the Knight Defendants (Count II). The Plaintiff also asserts a claim for punitive damages against Frost.

As set forth below, both of the Plaintiff's claims against Frost should be dismissed. Counts I and II should be dismissed because the Plaintiff, as a third party to the engagement of Frost by Knight Industries, has no standing to bring its claim for professional negligence against Frost pursuant to the Illinois Public Accounting Act. Additionally, these Counts should be dismissed because they are barred by the two-year statute of limitations for claims against an accountant. Further, Count II should be dismissed because the Plaintiff fails to plead the required elements of a claim for aiding and abetting and the aiding and abetting claim is duplicative of the professional negligence claim. Finally, the Plaintiff's claim for punitive damages against Frost should be dismissed because the Plaintiff has not alleged facts indicating that Frost acted with the requisite malice, evil motive, or reckless indifference.

## ARGUMENT

A complaint should be dismissed if it "fails to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court should grant this relief if the allegations of the complaint do not "raise [the plaintiff's] right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the Plaintiff's Amended Complaint does not state claims against Frost on which relief can be granted.

## I. PLAINTIFF DOES NOT HAVE STANDING PURSUANT TO THE ILLINOIS PUBLIC ACCOUNTING ACT

The Plaintiff's claims for professional negligence (Count I) and aiding and abetting the Knight Defendants' breach of fiduciary duty (Count II) as alleged against Frost should be dismissed because the Plaintiff does not have standing to bring such claims pursuant to the

3

Illinois Public Accounting Act, 225 ILCS 450/0.01, *et seq*. ("IPAA"). Section 30.1 of the IPAA limits the liability of public accountants to third parties not in privity with the accountant, stating that:

> No person, partnership, corporation, or other entity licensed or authorized to practice under this Act or any of its employees, partners, members, officers or shareholders shall be liable to persons not in privity of contract with such person, partnership, corporation, or other entity for civil damages resulting from acts, omissions, decisions or other conduct in connection with professional services performed by such person, partnership, corporation, or other entity, except for:
>
> (1) such acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations, or
>
> (2) such other acts, omissions, decisions or conduct, if such person . . . was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action . . . .

225 ILCS 450/30.1. Thus, an accountant can only be liable to a third party for non-fraud claims if the accountant was aware that a primary intent of the client was for the accounting services to benefit or influence the plaintiff ("primary intent standard"). *See Endo v. Albertine*, 815 F. Supp. 1479, 1495-96 (N.D. Ill. 1993) (dismissing negligence claim against accountants where there were no allegations of privity and the § 30.1 requirements were not satisfied); *Kopka v. Kamensky and Rubenstein*, 354 Ill.App.3d 930, 938 (affirming dismissal of negligence claim against accountants based on § 30.1 because accountant did not owe "a duty of care to all persons who would foreseeably rely on its statements, as this is not the law in Illinois").

Courts interpreting this "primary intent" standard have clarified that in order to invoke the standard as a basis for accountant liability to a third party, a plaintiff must plead either independent verification by the accountant to the third party or some "other conduct" on the part of the accountant directed to the third party. *Tricontinental Industries, Ltd. v.*

4

*PricewaterhouseCoopers, LLP*, 475 F.3d 824, 837-838 (7th Cir. 2007). In other words, "*some* affirmative action on behalf of the defendant-accountant is necessary." *Id.* at 837.

For example, in *Tricontinental Industries*, plaintiffs were a corporation (Tricontinental) that sold assets for purchase of another corporation's stock and subsequent owners of such stock. The plaintiffs brought a negligent misrepresentation claim against the selling corporation's accounting firm, alleging that the accounting firm knew of Tricontinental's reliance on its audit opinion, knew of misrepresentations contained in the opinion, and allowed Tricontinental to rely on the false and misleading information. *Id.* at 839. The court found that the plaintiffs lacked standing to bring their negligent misrepresentation claim pursuant to IPAA Section 30.1 because the plaintiffs failed to allege that "it was a primary purpose of the accountant-client relationship . . . to benefit or influence Tricontinental." *Id.* In sum, "[a]bsent an allegation that fairly states that [the selling corporation's] primary intent in retaining and utilizing [the accounting firm's] services and work product during the transaction was to influence Tricontinental, or absent factual allegations that support such an inference, Tricontinental has not stated a claim for negligent misrepresentation under Illinois law." *Id.*

Here, the Plaintiff does not dispute that Frost was hired the Knight Entities – and not the Plaintiff – to perform certain auditing services for the years ended December 31, 2005 and December 31, 2006 (Compl. ¶ 102). Accordingly, in order for the Plaintiff to state its non-fraud-based causes of action against Frost, it must plead facts showing that the Knight Entities' primary intent in hiring Frost to perform audits of its financial statements was for those audits to benefit or influence the Plaintiff and some act by Frost recognizing that primary intent. As set forth below, the Plaintiff has not done so.

First and foremost, the engagement letters governing the relationship and scope of

services to be provided by Frost to the Knight Entities contain no language indicating *any* intention by Knight Industries that the audit financial statements were to benefit or influence Bank of America. (*See* Engagement Letters 2005 and 2006, Exs. A and B.) Indeed, the engagement letters make no mention of Bank of America at all.

Given this fact, the Plaintiff attempts to satisfy the primary intent standard in its Amended Complaint by simply stating that:

> The Auditor Defendants knew that Bank of America was relying on the financial statements of the Knight Entities being reviewed and audited by the Auditor Defendants and further knew that it was a primary intent of the Knight Entities and KQF for the audit opinions and other work to benefit and influence Bank of America.

(Compl. ¶ 153.) This statement attempting to simply regurgitate the primary intent standard and add the parties' names to it is insufficient. Furthermore, the Plaintiff does not plead why or how that it was a primary intent of the Knight Entities in hiring Frost to benefit or influence the Plaintiff. It goes without saying that hiring an accountant to audit financial statements can have many purposes and simply stating that one of the intents of Knight Entities was to provide the audit financial statements to the Plaintiff does not satisfy the primary intent standard.

The Plaintiff then pleads that Frost "expressly" acknowledged "the intent" of its 2005 and 2006 audits and the purpose of its report was in support of the Knight Entities' debt requirements and goes on to list several generic statements about use of the audit reports for debt and references to loan covenants (Compl. ¶ 155.) However, once again, Plaintiff's allegations fall short. As case law interpreting § 30.1(2) specifically states, the Plaintiff must show that a primary intent of the client was for the auditor's services to benefit or influence *the particular person bringing the action*. In other words, the relevant inquiry is whether a primary intent of the Knight Entities was for Frost's services to benefit or influence Bank of America, not whether

one of the purposes of Frost's audit was that it be used for debt.  "Debt" could cover any number of entities and it certainly cannot be that each and every lender that may use the audited financial statements has standing to sue Frost under the IPAA.  Further, an accountant's mere knowledge of an audit requirement contained in loan documents is insufficient to establish an overriding intent to confer a benefit on a third-party lender sufficient to support that lender's claim for accounting malpractice.  *Bank of America v. Musselman*, 240 F. Supp. 2d 547, 556 (E.D. Va. 2003) (interpreting analogous intent to benefit requirements under Virginia law).

Because the Plaintiff has failed to allege facts showing that it was a primary intent of the Knight Entities that the audited financial statements benefit or influence Bank of America and that Frost was aware of such intention, the Plaintiff lacks standing to bring its claims against Frost and they should be dismissed.

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The Plaintiff's claims are also time barred.  Section 5/13-214.2 of the Illinois Code of Civil Procedure sets forth the statute of limitations for actions against public accountants in Illinois.  735 ILCS 5/13-214.2.  The statute provides that any action based upon tort, contract or otherwise must be commenced within 2 years from the time the person bringing the action knew or should have known of the act or omission that forms the basis for the cause of action.  735 ILCS 5/13-214.2(a).  As such, the statute applies to both Counts I and II of the Plaintiffs' Amended Complaint.

The next inquiry must be to determine when the Plaintiff's cause of action accrued.  The Plaintiff alleges that the Knight Entities defaulted on over $34,000,000 of loan obligations in September 2008.  Plaintiff has alleged that it has been injured because it has not recovered the amounts due to it on the loan obligations.  (Compl. ¶ 232.)  Accordingly, the Plaintiff first

suffered its injury when its Loans to the Knight Entities became due and payable and were not repaid, which occurred – at the latest – on September 30, 2008. (*Id.* ¶ 83.)

Once the Knight Entities defaulted on the Loan Agreements, the Plaintiff was on notice of the need to investigate why its borrower defaulted and whether, and against whom, the Plaintiff may have causes of action. *City National Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 283-284 (7th Cir. 1994) (lender's third-party claim for accounting malpractice accrued on the date the accountant's client defaulted on the loan). "A thorough investigation mandates that the bank consider the potential liability of all parties involved in [the bank's] process of making the loan [to the borrower], and obviously the accounting firm which prepared the financial statements upon which [the bank] relied should have been included in that investigation." *Id.*

The Plaintiff alleges that it did not know at the time of default, nor could it reasonably have known, that the Knight Entities would ultimately be unable to repay the loans in full or that the Knight Entities' inability to pay was attributable to wrongful conduct. (Compl. ¶ 84). This allegation does nothing to salvage Plaintiff's claims, however, and must be rejected. "[I]f a claim accrues even though the victim does not know that he has a legal entitlement to recover, *the fact that the victim does not know who would be the right defendant cannot matter.*" *Checkers, Simon & Rosner*, 32 F.3d at 284, quoting *Central States Pension Fund v. Navco*, 3 F.3d 167, 171 (7th Cir. 1993). In *Checkers, Simon & Rosner*, the plaintiff's lender sought to recover against the borrower's accountant for alleged negligence in the preparation of financial statements for losses it suffered on the loans made to the accountant's client. The Seventh Circuit expressly determined that the lender's cause of action accrued on the day the borrower defaulted on the loan in question. *Id.* at 283.

8

Here too, dismissal is warranted. The face of the Second Amended Complaint establishes that the Knight Entities defaulted on their Loan Agreement on September 30, 2008. The Plaintiff did not file this action until January 14, 2011, over three months after the statute of limitations expired on September 30, 2010. Accordingly, Plaintiff's claims in both Counts I and II are time-barred and should be dismissed with prejudice as to Frost.

III.    **PLAINTIFF'S CLAIM FOR AIDING AND ABETTING SHOULD BE DISMISSED.**

In Count II of its Second Amended Complaint, the Plaintiff attempts to plead a claim against Frost for aiding and abetting the Knight Defendants' alleged breach of their fiduciary duties to the Plaintiff. As set forth below, Count II as alleged against Frost should be dismissed because (1) the Plaintiff fails to plead the required elements of a claim for aiding and abetting; and (2) the aiding and abetting claim is duplicative of the Plaintiff's negligence claim.

A.  **Plaintiff Fails To Plead The Elements Of Aiding And Abetting.**

In order to plead a claim for aiding and abetting, one must allege the following elements: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Grimes v. Saikley*, 904 N.E.2d 183, 196 (Ill. App. 2009).

Here, as the following demonstrates, the Plaintiff's claim fails because (1) Plaintiff fails to plead that the Knight Defendants performed the alleged wrongful act of breach of fiduciary duty because it fails to plead a fiduciary relationship between the Knight Defendants and the Plaintiff; and (2) Plaintiff has failed to plead that Frost was regularly aware of its role as part of the tortious activity or that it knowingly and substantially assisted in the principal violation.

1.  **Plaintiff Fails To Plead A Wrongful Act.**

9

It is axiomatic that where a party fails to state a claim for the underlying wrongful act by the primary tortfeasor, aiding and abetting claims against his would-be accomplices also fail as a matter of law. *See Timothy & Thomas LLC v. Viral Genetics, Inc.*, No. 06 C 1813, 2010 WL 3155972, *22-25 (N.D. Ill. Aug. 10, 2010) (holding that because the "breach of fiduciary duty claim against [defendant] does not survive . . . the aiding and abetting claim based on [defendant's] alleged breach of his fiduciary duties must also fail"). Here, the Plaintiff bases its aiding and abetting claim on the allegedly wrongful breach of fiduciary duty committed by the Knight Defendants. As such, the Plaintiff must properly plead that the Knight Defendants breached a fiduciary duty to Plaintiff. *Alpha School Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134, 1158 (Ill. App. 2009).

As set forth in the Memorandum of Law in Support of Motion to Dismiss filed by Defendants James A. Knight, Deforest Davis, Paul Flask, Marie O'Barr, Cynthia Knight, Robert Wasielewski, Lisa Rogers, Olney LP, and Knight Quartz Flooring – Global, LLC, the Plaintiff has not sufficiently alleged that the Knight Defendants breached a fiduciary duty to the Plaintiff. Frost hereby joins in that Motion and adopts the arguments set forth therein. Because the Plaintiff has not properly pled that the Knight Defendants owed the Plaintiff a fiduciary duty, the Court should dismiss Count II of its Second Amended Complaint as alleged against Frost.

### 2. Plaintiff Fails To Plead That Frost Knowingly And Substantially Assisted In The Knight Defendants' Conduct.

In order to plead a claim for aiding and abetting, a plaintiff must allege ***more*** than knowledge and failing to take certain actions by the defendant. *See Grimes*, 904 N.E.2d at 196 (dismissing aiding and abetting claim because "[w]hile allegations of having knowledge and failing to take certain actions may be part of a cause of action for negligence in certain instances, those allegations do not allege that defendants (1) were regularly aware of their regular role in

10

the tortious activity at the time of the assistance or (2) substantially assisted in the principal violation").

Here, the Plaintiff alleges nothing more than negligence on the part of Frost. The Plaintiff's Complaint is entirely devoid of any allegations that Frost purposely assisted the Knight Defendants in any breach of their fiduciary duties. Rather, the Plaintiff simply reiterates its negligence claim against Frost, alleging that Frost's failure to comply with the professional standards of GAAP and GAAS aided and abetted the breach of fiduciary duty of the Knight Defendants. (*See* Compl. ¶ 240(a)-(c).) The Plaintiff tries to meet the pleading requirements for aiding and abetting by adding a claim that Frost had "full knowledge of the breaches of fiduciary duty" and that Frost "knowingly provided substantial assistance" to the fiduciaries (Compl. ¶ 240). Putting aside the fact that Plaintiff puts forth no factual allegations in support of such knowledge, *Grimes* mandates that mere knowledge is not sufficient to support allegations for aiding and abetting. In addition, Plaintiff puts forth no allegations that Frost was in any way purposefully assisting the Knight Defendants in any of the conduct that Plaintiff claims constitutes a breach of fiduciary duty.

Because the Plaintiff fails to plead facts supporting its claim for aiding and abetting by Frost, Count II of the Amended Complaint as alleged against Frost should be dismissed.

## B. Plaintiff's Claim For Aiding And Abetting Is Duplicative Of Its Negligence Claim.

Even if the Plaintiff has pled facts sufficient to support its claim for aiding and abetting against Frost – which it has not – its claim still fails because it is entirely duplicative of the negligence claim alleged against Frost.

Under Illinois law, duplicative counts of a Complaint may be dismissed. *Nagy v. Beckley*, 218 Ill.App.3d 875 (1st Dist. 1991). A count is duplicative and subject to dismissal if "it

11

alleges the same operative facts and the same resulting injury" as in the underlying negligence claim. *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill.App.3d 784, 791 (1st Dist. 2002). For example, in *Calhoun v. Rane*, 234 Ill.App.3d 90 (1st Dist. 1992), the plaintiff filed a three-count complaint, with Count I alleging professional malpractice and Count II alleging breach of fiduciary duty. On defendant's motion to dismiss the fiduciary duty count, the trial court ordered that count stricken as duplicative of the professional negligence count. On appeal, the court examined the language of the professional negligence count and the breach of fiduciary duty count and found that the plaintiff had not pleaded a cause of action for breach of fiduciary duty distinct from the alleged professional negligence. As such, the court held that the trial court properly dismissed the breach of fiduciary duty count as duplicative.

Similarly, the Illinois Supreme Court dismissed a breach of fiduciary duty count against a physician as being duplicative of a professional malpractice claim in *Neade v. Portes*, 739 N.E.2d 496, 502 (2000). The *Neade* court observed that the operative facts and the injury pleaded must be examined to determine whether or not the cause of action is duplicative. *Id.* The court noted that the standard of care was the relevant inquiry by which the court or jury would judge the defendant's actions in both the professional negligence count and also the breach of fiduciary duty count. As such, the Court held that it "need not recognize a new cause of action for breach of fiduciary duty when the traditional medical negligence claim sufficiently addresses the same alleged misconduct. The breach of fiduciary duty claim in the case at bar would be duplicative of the medical negligence claim." *Id.* at 503.

The same principle has been held to apply under Illinois law in an action against an accounting firm. In *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*, No. 04 C 2926, 2004 WL 2359233 (N.D. Ill. October 19, 2004), the plaintiffs alleged independent counts of

accounting negligence and breach of fiduciary duty. Relying on *Fabricare* and *Calhoun*, the court dismissed the plaintiff's claims for breach of fiduciary duty and negligence as duplicative because the claims dealt with the same set of relevant facts, the same dereliction of duty, and alleged the same financial injuries. *See also In re Nanovation Techs. Inc.*, 364 B.R. 308, 345-46 (Bankr. N.D. Ill. 2007) (disregarding claim that KPMG aided and abetted directors in their breach of fiduciary duties as duplicative of professional malpractice claim).

It is clear from a review of the Complaint that the claim for aiding and abetting breach of fiduciary duty alleged against Frost is based on the same set of facts and conduct as its claim against Frost for professional negligence. Both counts are based on the fundamental factual allegation that Frost failed to exercise due professional care in accordance with GAAS and other professional standards. Specifically, in both counts, the Plaintiff alleges that Frost failed to identify that the Knight Entities' financial statements and/or accounting procedures were not in compliance with professional standards. (Compl. ¶ 228(a); 240(a).) In sum, both of the Plaintiff's claims are based on the alleged negligence of Frost in the performance of its accounting services to the Knight Entities and therefore they are duplicative of one another.

Because Count II alleging aiding and abetting against Frost is based on the same conduct as Count II alleging negligence, the Court should dismiss Count II as duplicative.

## IV. <u>PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.</u>

The Plaintiff alleges that it is entitled to punitive damages on its aiding and abetting claim alleged against Frost. In order to plead entitlement to punitive damages, a plaintiff must plead facts alleging "gross or outrageous misconduct or acts of reckless indifference." *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 858, 658 N.E.2d 1325, 1336 (1st Dist. 1995) (dismissing plaintiffs' claim for punitive damages because allegations did not "rise to the level of actual

malice, evil motive or reckless indifference so as to justify an award of punitive damages"). Further, courts should award punitive damages "only if the defendant's misconduct is above and beyond the conduct needed for the basis of the action." *Parsons v. Winter*, 142 Ill.App.3d 354, 361, 491 N.E.2d 1236, 1241 (1st Dist. 1986) (reversing trial court's failure to grant judgment *n.o.v.* on the issue of punitive damages because "[a]lthough plaintiff alleged that defendants acted intentionally, he did not plead any facts that show defendants' conduct rising above and beyond that necessary for an action for fraud").

Here, the Plaintiff fails to plead any facts that would entitle it to punitive damages. The Plaintiff attempts to allege only the required elements for aiding and abetting. The Plaintiff does not plead any facts that allege malice, evil motive, or reckless indifference on the part of Frost. Indeed, as set forth *supra*, the Plaintiff does not even plead all of the requisite elements to state an aiding and abetting claim because it attempts to bring its claim based on mere negligence of Frost, let alone any of the heightened scienter requirements for punitive damages.

The Plaintiff makes only one fleeting attempt at elevating the alleged conduct of Frost when it states that Frost's actions "were intentional or at least reckless" (Compl. ¶ 241). However, the Plaintiff fails to plead any facts supporting that statement, such as conduct on the part of Frost that would indicate that it knew about any of the alleged breaches of fiduciary duty and conducted itself with malice, evil motive, or reckless indifference toward the Plaintiff. The mere negligence on which Plaintiff's aiding and abetting claim is based simply does not give rise to a cause of action supporting an award of punitive damages. As such, the Court should strike the Plaintiff's claim for punitive damages against Frost.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Counts I and II of the

14

Plaintiff's Second Amended Complaint alleged against Defendant Frost, Ruttenberg, &

Rothblatt, P.C. and strike the Plaintiff's claim for punitive damages pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure and there exists no just reason for delay in entry of a final

judgment as to Plaintiff's claims against Frost.

By: _Thomas J. Falkenberg_
Thomas F. Falkenberg,
One of the Attorneys for Defendant
FROST, RUTTENBERG, & ROTHBLATT, P.C.


Thomas F. Falkenberg
Kirstin B. Ives
WILLIAMS MONTGOMERY & JOHN LTD.
Willis Tower
233 South Wacker Drive
Suite 6100
Chicago, Illinois, 60606-6359
(312) 443-3200
Firm ID 04933
tff@willmont.com
kbi@willmont.com

# <u>EXHIBIT A</u>

**To Defendant Frost, Ruttenberg & Rothblatt, P.C.'s Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint and Strike Plaintiff's Claim for Punitive Damages**



111 Pfingsten Rd. • Suite 300 • Deerfield, IL 60015
Tel 847.236.1111 • Fax 847.236.1155

One North LaSalle St. • Suite 1500 • Chicago, IL 60602
Tel 312.263.4455 • Fax 312.419.6689

www.frronline.com

August 26, 2005

Mr. Rob Wasielewski
Knight Industries, LLC
One Northfield Plaza, Suite 400
Northfield, IL 60093

Dear Rob:

We are pleased to confirm our understanding of the services we are to provide for Knight Industries, LLC and related companies for the year ended December 31, 2005.

We will audit the consolidated balance sheet of Knight Industries, LLC and its Subsidiaries as of December 31, 2005 and the related consolidated statements of income, and cash flows for the year then ended.

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with U.S. generally accepted auditing standards and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement.

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of receivables and certain other assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will also require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgement about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity. Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed



Mr. Rob Wasielewski
Knight Industries, LLC and Affiliates
August 26, 2005
Page 2

examination of all transactions, there is a risk that material misstatements may exist and not be detected by us. In addition, an audit is not designed to detect immaterial misstatement or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform you of any material errors that come to our attention and we will inform you of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform you of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions, that is, significant deficiencies in the design or operation of the internal control. However, during the audit, if we become aware of such reportable conditions, we will communicate them to you.

You are responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. We will advise you about appropriate accounting principles and their application and will assist you in preparation of your financial statements, but the responsibility for the financial statements remains with you. This responsibility includes the establishment and maintenance of adequate records and effective internal controls over financial reporting, the selection and application of accounting principles, and the safeguarding of assets. You are responsible for adjusting the financial statements to correct material misstatements and for confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as whole. You are also responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. You are also responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

We understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

We expect to begin our preliminary audit work in the fall of this year, and to issue our report no later than March 31, 2006. We may engage other accounting firms to observe the counting of inventory during the last week of December at your facilities.

Mr. Rob Wasielewski
Knight Industries, LLC and Affiliates
August 26, 2005
Page 3

We estimate that our fees for these services should be approximately $65,000. The fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the audit. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our report. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

Cary N. Drazner

/sla

RESPONSE:

This letter correctly sets forth the understanding of Knight Industries, LLC and Subsidiaries

Officer Signature: _Robert J Wasielewski_

Title: __Chief Financial Officer__

Date: __Oct 6, 2005__

# <u>EXHIBIT B</u>

**To Defendant Frost, Ruttenberg & Rothblatt, P.C.'s Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint and Strike Plaintiff's Claim for Punitive Damages**



*111 Pfingsten Rd. • Suite 300 • Deerfield, IL 60015*
*Tel 847.236.1111 • Fax 847.236.1155*

*One North LaSalle St. • Suite 1500 • Chicago, IL 60602*
*Tel 312.263.4455 • Fax 312.419.6689*

*www.frronline.com*

September 13, 2006

**Confirmation Copy**

Mr. Rob Wasielewski
Knight Industries, LLC
One Northfield Plaza, Suite 400
Northfield, IL 60093

Dear Rob:

We are pleased to confirm our understanding of the services we are to provide for Knight Industries, LLC and related companies for the year ended December 31, 2006.

We will audit the consolidated balance sheet of Knight Industries, LLC and its Subsidiaries as of December 31, 2006 and the related consolidated statements of income, and cash flows for the year then ended.

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with U.S. generally accepted auditing standards and will include tests of your accounting records, and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement.

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of receivables and certain other assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will also require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgement about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity. Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed



Mr. Rob Wasielewski
Knight Industries, LLC and Affiliates
September 13, 2006
Page 2

examination of all transactions, there is a risk that material misstatements may exist and not be detected by us. In addition, an audit is not designed to detect immaterial misstatement or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform you of any material errors that come to our attention and we will inform you of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform you of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed. An audit is not designed to provide assurance on internal control or to identify reportable conditions, that is, significant deficiencies in the design or operation of the internal control. However, during the audit, if we become aware of such reportable conditions, we will communicate them to you.

You are responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. We will advise you about appropriate accounting principles and their application and will assist you in preparation of your financial statements, but the responsibility for the financial statements remains with you. This responsibility includes the establishment and maintenance of adequate records and effective internal controls over financial reporting, the selection and application of accounting principles, and the safeguarding of assets. You are responsible for adjusting the financial statements to correct material misstatements and for confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as whole. You are also responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. You are also responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

We understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

We expect to begin our preliminary audit work in the fall of this year, and to issue our report no later than March 31, 2007. We will contact you to coordinate scheduling the fieldwork. We may engage other accounting firms to observe the counting of inventory during the last week of December at your facilities.

*MAY 15, 2007*

Mr. Rob Wasielewski
Knight Industries, LLC and Affiliates
September 13, 2006
Page 3

We estimate that our fees for these services should be approximately $74,000. The fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the audit. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our report. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

Cary N. Drazher

/sla

RESPONSE:

This letter correctly sets forth the understanding of Knight Industries, LLC and Subsidiaries

Officer Signature: _Robert J Wiselen_

Title: _Chief Financial Officer_

Date: _Oct 23, 2006_